### WILLIAMS against MILLER.

*Where an assignee in bankruptcy had designated and set apart for the bank-rupt under the 3rd section of the late bankrupt act, certain tin machines, which were implements of the bankrupt's trade, and exempt from execution; it was held, that a sale of such machines at the post, on execution, previous to the decree in bankruptcy, did not divest the bankrupt of his title, or vest any title in the purchaser.*

*The levy of an execution on property exempt from execution has no more effect as to a change of title, than a levy on the property of a third person.*

*At any rate, the officer, who wrongfully takes such property on execution, can-not, as against the debtor, justify the taking, by virtue of the process.*

THIS was an action of trespass, with a count in trover, for certain tin machines, which, the plaintiff claimed, were unlaw-fully taken by the defendant, and converted to his use.

The cause was tried, on the general issue closed to the court, at an adjourned term of the superior court, at *Hart-ford*, in *April*, 1844, before *Williams*, Ch. J.

The taking of the machines being admitted, the defendant justified the taking thereof, by virtue of a writ of an attach-ment, and a sale on an execution levied thereon, on the 11th of *March*, 1842. He also claimed, that on the 21st of *Feb-ruary*, 1842, the plaintiff brought his petition to the district court of the district of *Connecticut*, for the benefit of the bankrupt act of the *United States*, and on the 25th of *March*, 1842, was duly declared a bankrupt; and that on the 28th of *June* thereafter, he was duly discharged from all his debts. And the defendant claimed, that in consequence of these pro-ceedings, the plaintiff could not sustain the present action.

The plaintiff claimed, that the articles so taken by the de-fendant, were implements of his, the plaintiff's trade, and not liable to be taken by attachment or execution, and could not pass to or vest in his assignee. He further claimed, that after he was duly declared a bankrupt, the assignee designa-ted and set apart said machines for his, the plaintiff's use and benefit, under the bankrupt law of the *United States;* and so the assignee had no more right to them, or to the avails there-of, than if no bankruptcy had intervened; and that thereafter, and before the present suit was brought, he demanded them of the defendant, which he refused to deliver.

The court was of opinion and decided, that the act of the

assignee in relation to this property, left the plaintiff in possession of the same rights he would have had, if no bankruptcy had intervened, and rendered judgment in his favour. The defendant thereupon moved for a new trial.

*Goodman*, in support of the motion, contended, 1. That if this property was taken wrongfully, the plaintiff, at the time he brought his petition, had a right of action against the defendant; and this right of action, when the plaintiff was declared a bankrupt, vested in the assignee. *Bank. Law, sect.* 3. 5 *Law Reporter,* 22. 71. 116. 225. 308. 399. *Owen on Bank.* 85. He could maintain an action for the property. *Porter* v. *Vorley,* 9 *Bing.* 93. (23 *E. C. L.* 272.) *Wright* v. *Fairfield* & al. 2 *B. & Ad.* 727. (22 *E. C. L.* 175.) If the suit had been commenced before the plaintiff had been declared a bankrupt, the assignee might have prosecuted it. If this property never vested in the assignee, he could not set it back to the plaintiff.

2. That the assignee had no power to "designate and set apart" the property in question. All the power he had, he derived from the 3rd section of the bankrupt law; and he must be restricted to the articles there specified. These are "necessary household and kitchen furniture," and "other articles and necessaries." Now, in the first place, the property in question, (as has been shown,) was a right of action, which is clearly not within the statute. But secondly, these machines were not *necessary articles* within the statute. They were part of the machinery of a manufacturing establishment— whether on a large or small scale, does not appear, and perhaps is not material. The "articles and necessaries" intended by the statute, are of the same class as "household and kitchen furniture."

*Chapman* and *Drake*, contra, contended, 1. That the property in question being designated and set apart by the assignee, for the bankrupt, under the late bankrupt law, *sect.* 3. was excepted from the operation of that law, and did not pass to the assignee. *Owen on Bank.* 57. 66. In the matter of *B. B. Grant,* 5 *Law Reporter*, 13. The bankrupt was not required to surrender this property, and never did deliver it to the assignee.

2. That as to the excepted articles, the bankrupt retained

all his rights and remedies as before the bankruptcy. 1 *Chitt. Plead.* 72. (8th *Am.* ed.)

3. That no right of action for a *tort* passed, by the bankrupt act, to the assignee. In the first place, that act is conversant about *property*, and the *rights of property*, only. See *sec.* 3, 4, 5, 6. Secondly, the remedy for a tort is not, in its nature, assignable. Thirdly, by the former bankrupt law of the *United States,* no property was excepted out of its operation; and yet, under that law, a right of action for a tort did not pass to the assignee. 2 *Root,* 52. 3 *Day,* 272. 1 *Yeates,* 245. 2 *Dall.* 213.

4. That the levy and sale were entirely inoperative, as the property was exempt from execution.

HINMAN, J. The machines for which this suit was brought being implements of the plaintiff's trade, and the assignee in bankruptcy having designated and set them out, under the third section of the late bankrupt act; the superior court was of opinion, that this act of the assignee, left the plaintiff in possession of the same rights respecting them, he would have had, if no bankruptcy had intervened; and, therefore, rendered judgment for the plaintiff. And the question is, whether there is any error in this judgment.

The third section of the bankrupt act, after enacting, that all the property, and rights of property, of every bankrupt, except as is afterwards provided, shall, by operation of law, from the time of the decree in bankruptcy, be deemed to be divested out of such bankrupt, and be vested in the assignee, provides, "That there shall be excepted from the operation of the provisions of this section, the necessary household and kitchen furniture, and such other articles and necessaries of such bankrupt, as the said assignee shall designate and set apart, having reference," &c. When, therefore, the assignee had designated and set apart these machines, under this proviso, they were, by this language, expressly excepted out of the provisions of the only section of the act, that purports to divest the bankrupt of his property. Indeed, this language is such that it is not denied that all the right the plaintiff ever had to the machines is saved to him, unless, at the time of the decree in bankruptcy, the plaintiff had become divested of his property in them, by the acts of the defendant. But, as it

*Hartford,*
June, 1844.

Williams
*v.*
Miller.

appears from the motion, that the machines were sold at the post, previous to the decree in bankruptcy, the defendant insists, that this public sale, though tortious, inasmuch as they were exempt from execution, being implements of the debtor's trade, nevertheless, conveyed a good title to the purchaser, and therefore, divested the plaintiff of his title, so that the act of the assignee, in setting them out for the use of the plaintiff, was inoperative ; there being, at the time, no property in them, either in the bankrupt or the assignee. And the defendant has, in his argument, assumed it, as an established principle, that a sale at the post by an officer, under colour of process, divests an owner of his title to property, and conveys a good title to the purchaser, although the taking and sale are illegal. But we can sanction no such principle as this, unless we are first satisfied, that it is correct; and no attempt has been made to show that it is ; but the defendant has assumed it, and argued from it, as an acknowledged principle. Now, there cannot, we think, be any difference in the law applicable to the levy of an execution on property exempt from such levy, and a levy on the property of a third person, not the execution debtor. We can discover no difference in the principle, that should apply to the two cases. But will the broad ground be taken, that the levy of an execution upon a third person's property, and a sale of it, by an officer, divests such third person of his title ? Is it so, that because a trespass is committed by an officer, pursuant to the forms of law, therefore, the property upon which it is committed, is swept from the owner, and he turned over to seek his only remedy from the party taking it ? May he not look to the property also, if he can find it ?

The general rule is, that a man having no authority to sell, cannot, by making sale, transfer the property to another ; that the vendee of a chattel cannot stand in any better condition than his vendor ; and we are not aware of any such exception to this rule, as is assumed by the defendant in this case. The only exception noticed in the *English* cases, is, where a sale is made in market overt. *Dyer* v. *Pearson,* 3 *B. & C.,* 38. (10 *E. C. L.* 13.) *Par* v. *Humphrey,* 2 *Ad. & El.* 495. (29 *E. C. L.* 158.) *Williams* & al. v. *Barton* & al., 3 *Bing.* 139. (11 *E. C. L.* 70.)

We have not been referred to any authority in support of the position assumed by the defendant ; but, we find, on the

*Hartford,*
*June, 1844.*

Williams
*v.*
Miller.

contrary, that Lord *Mansfield*, in *Cooper* & al., assignees of *Johns*, v. *Chitty*, 1 *Burr.* 32. considered it an admitted point, that the innocent vendee of goods, wrongfullly seized by the sheriff, could have no title under the sale, but that he is liable to an action.    And in the case of *Balme* & al. v. *Hutton* & al. 9 *Bing.* 471, (23 *E. C. L.* 338.) *Tindal*, C. J. says, " Servants of the bankrupt, judgment creditors, who set the law in motion, *vendees at the sheriff's sale*, and all other persons, who assist in selling, disposing or removing the goods of a bankrupt, would confessedly be held guilty of a wrongful conversion."

We are aware, that cases may be found where it has been held, that a sale by an officer of the execution debtor's property, is valid, so far as the rights of purchasers are concerned, though there has been some irregularity in the proceedings. Thus, in *Wheaton* v. *Sexton's* lessee, 4 *Wheat.* 503. the court say, " Whether the marshall sells before or after the return, whether he makes a correct return, or any return at all to the writ, is immaterial to the purchaser, provided the writ was duly issued, and the levy made before the return." But cases of this description, however numerous, do not sanction the doctrine assumed by the defendant ; yet they are believed to go as far upon the subject as any that can be found.

As then, there is no foundation for this assumption of the defendant, either in principle, or in the authority of any adjudged case, it follows, that the plaintiff never was divested of his property in these machines, by this wrongful act of the defendant.    And we are also of opinion, that the superior court was right, in supposing that the act of the assignee in designating this property for the use of the defendant, under the proviso in the third section of the bankrupt act, left the plaintiff in possession of the same right, as if no bankruptcy had intervened.    It follows, if we are right in this, that there can be no merits in this defence ; and we might stop here.

But, even admitting that the sale at the post did divest the plaintiff of his title, and convey a good title to the purchaser, it may still be well doubted, whether the defendant can be permitted to set this up, in order to defeat the plaintiff, in this action.    It must be admitted, that the plaintiff once had title to the machines ; that he continued to own them, until they were sold at the post ; and that *he* has done no act to divest

himself of his title. If then, it is gone from him, it is in consequence of the wrongful acts of the defendant, and the policy of the law, in protecting an innocent purchaser at a public sale, and not in consequence of any thing that he has done. Ought, then, the defendant to be permitted to set up his own wrongful acts to defeat the plaintiff in this action?

The defendant ought to be accountable to somebody for this property. The assignee in bankruptcy does not claim it. He designated and set it out, under the 3d section of the bankrupt act, for the use of the plaintiff. If then, the plaintiff cannot recover for it, it would seem that no one can. Shall the defendant be permitted to run off with it? We think, therefore, that upon this ground, as well as upon the question of title, the case is with the plaintiff. And there is, therefore, no error in the judgment of the superior court, and no new trial can be granted.

In this opinion, the other Judges concurred.

New trial not to be granted.